```
                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA
_____
                            )
UNITED STATES OF AMERICA,   )
                            )
        v.                  )   Crim. Action No. 05-100-2 (RWR)
                            )
DAVID WILSON,               )
                            )
        Defendant.          )
_____)
```

## MEMORANDUM OPINION AND ORDER

After being found guilty of two counts of aiding and abetting first-degree murder, in addition to other charges, the defendant moved for a new trial on the basis of newly discovered evidence. Because the evidence is not of the type that would probably produce an acquittal in a new trial, the defendant's motion will be denied.

### BACKGROUND

The background of this case is discussed fully in United States v. Wilson, 720 F. Supp. 2d 51 (D.D.C. 2010). Briefly, the defendant was a member of a group who sold crack cocaine in the Congress Park neighborhood of Southeast Washington, D.C. Id. at 55. One of Wilson's childhood friends was shot and killed, and members of the Congress Park group believed that Ronnie Middleton was the shooter. Wilson committed himself to avenging the death of his friend. Witnesses testified that in 1998, Wilson and two other members of the Congress Park group, Antonio Roberson and Antoine Draine, spotted Middleton and his girlfriend, Sabrina

Bradley, sitting in a white Ford Bronco.  Wilson drove to Roberson's house to obtain a gun, and drove back with Roberson and Draine to where Middleton had parked his car.  Roberson opened fire on the car, and Middleton and Bradley both died as a result of the gunshot wounds they sustained.  Id. at 56.

On November 28, 2007, the defendant was found guilty of aiding and abetting the first-degree murders while armed of Sabrina Bradley and Ronnie Middleton (Counts 31 and 33), in addition to counts of distribution of crack cocaine and unlawful use of a communication facility.  Id. at 55.  The defendant filed a motion for a new trial alleging that the government failed to disclose exculpatory Brady material and that the government sponsored false testimony.  That motion was denied because the testimony was not demonstrably false and neither that nor the undisclosed information could reasonably have affected the outcome or the fairness of the trial.  Id.

On November 27, 2010, the defendant filed an additional motion under Federal Rule of Criminal Procedure 33 for a new trial, arguing that newly discovered evidence shows that another individual -- not the defendant -- aided and abetted the murders of Bradley and Middleton.[1]  (Def.'s Nov. 27, 2010 Mot. for a New

---

[1] The government argues that the motion is untimely.  "Any motion for a new trial grounded on newly discovered evidence must be filed within 3 years after the verdict or finding of guilty."  Fed. R. Crim. P. 33(b)(1).  The defendant timely filed his motion on November 27, 2010, which is within three years after the jury

Trial ("Def.'s Mot.") at 2-3.) The newly discovered evidence is an affidavit of Dorian Von Holt, who swore to it while incarcerated at the District of Columbia jail in July 2009. (Id., Ex. 11 ¶ 2.) Wilson was incarcerated in the same jail during that time. Holt's affidavit claims the following. During a summer night in 1998, he went to Congress Park to purchase crack. Roberson brandished a gun, and induced Holt to drive Roberson and another man to a white Ford truck. Roberson shot at the truck, and then Holt drove Roberson and the other individual back to Congress Park. Holt knew Wilson at the time, Holt did not see Wilson in Congress Park that night, and Wilson was not at the shooting nor did he ride in the car to or from the shooting. (Id. ¶ 3.)

The government opposes the defendant's motion, arguing that Holt's affidavit is not credible. (Gov't Mem. in Opp'n to Def.'s Mot. for a New Trial at 3.)

## DISCUSSION

Under Rule 33, a court may "grant a new trial if the interest of justice so requires." To obtain a retrial because of newly discovered evidence,

> (1) the evidence must have been discovered since trial;
> (2) the party seeking the new trial must show diligence in the attempt to procure the newly discovered evidence; (3) the evidence relied on must not be merely

---

returned its verdict on November 28, 2007.

>  cumulative or impeaching; (4) it must be material to the issues involved; and (5) [it must be] of such nature that in a new trial it would probably produce an acquittal.

Thompson v. United States, 188 F.2d 652, 653 (D.C. Cir. 1951); see also United States v. Johnson, 519 F.3d 478, 487 (D.C. Cir. 2008) (citing Thompson). The showing required to obtain a new trial on the basis of newly discovered evidence poses "a high bar to cross[.]" United States v. Celis, 608 F.3d 818, 848 (D.C. Cir. 2010). If a defendant cannot demonstrate that a new trial would probably produce an acquittal, his motion may be denied on that ground alone. See, e.g., United States v. Sensi, 879 F.2d 888, 901 (D.C. Cir. 1989) (assuming defendant met first four factors and affirming denial of motion for new trial for failure to meet the fifth factor). No evidentiary hearing is required; such a motion may be decided on the basis of affidavits. United States v. Kearney, 682 F.2d 214, 219 (D.C. Cir. 1982).

Other circuits have held that newly discovered evidence consisting solely of an affidavit of a prisoner who spent time incarcerated with a defendant in which the prisoner claimed responsibility for the crime for which the defendant had been convicted, or attributed it to someone other than the defendant, did not satisfy the standard that it would probably produce an acquittal. For instance, in Jones v. United States, 279 F.2d 433, 434 (4th Cir. 1960), a third party confessed to committing the robbery for which two defendants had been convicted. Both

defendants were incarcerated for more than two months with the confessor, and they spoke during exercise periods. The confessor spent another two months incarcerated with one of the two defendants before he prepared a written statement in which he took responsibility for the robbery. The court affirmed the trial court's denial of a motion for a new trial on the ground that the confession was "improbable and unworthy of belief[.]" Id. at 436. In Evans v. United States, 122 F.2d 461, 464 (10th Cir. 1941), the appellant had been convicted of the first-degree murder of a fellow prisoner. A third fellow prisoner swore an affidavit stating that the victim's injuries were self-inflicted. Id. at 468. The Tenth Circuit refused to remand for a new trial on the basis of newly discovered evidence, concluding that the affidavit was "of very doubtful credibility" because the affiant "was a fellow prisoner with appellant . . . and did not disclose his information" until nearly two years after the alleged murder. Id. at 469. The court further reasoned that the affidavit appeared to be "a last effort scheme . . . in order that appellant may escape punishment for his crime, and is certainly not of that character of testimony which, if placed in evidence on a new trial, would probably produce an acquittal." Id.

Here, too, Holt's account is of questionable reliability. As in Jones and Evans, the new witness and the defendant were incarcerated in the same facility at the same time.

Additionally, Holt communicated his version of the events of the night at issue to the defendant's lawyer nearly eleven years later, and more than a year and a half after the jury returned its verdict. That delay further reduces the affidavit's credibility since the timing suggests, like in Evans, a last ditch effort for the defendant to escape punishment.

Even if Holt were to testify consistently with his affidavit at a new trial, his testimony is not such that it would probably produce an acquittal in light of the force of the evidence of Wilson's involvement in the murders that the government presented at trial. Bobby Capies and Kairi Kelliebrew testified that the defendant admitted to driving Roberson and Antoine Draine to the site where Middleton had parked his Ford Bronco. Wilson, 720 F. Supp. 2d at 62. Renne Cottingham, to whom Wilson was like a son and whom Wilson would sometimes call "Mom," testified that Wilson admitted to her that he had a role in Bradley's death. Id. at 62-63. Her testimony "was particularly compelling given her relationship with Wilson and the fact that she . . . was not testifying under any deal she had cut with the government." Id. at 65 n.6.

The defendant argues that the witnesses based their testimony on alleged admissions by the defendant, and that all three witnesses "were extensively impeached." (Def.'s Mot. at 3.) However, the jury was entitled to credit testimony that

recounted the defendant's admissions. See Fed. R. Evid. 801(d)(2)(A). Additionally, although defense counsel did attempt to impeach the witnesses who testified about Wilson's admissions of his involvement in the murders, the witnesses' testimony ultimately was "corroborated and credible[.]" Wilson, 720 F. Supp. 2d at 65. Even considering any weaknesses in the government's case, a jury would likely be at pain to credit Holt's recitation of the events of that night in light of the absence of corroboration in Wilson's motion of Holt's presence on the murder scene, viewed against the consistent details provided independently by Capies, Kelliebrew, and Cottingham corroborating Wilson's culpable conduct. The newly discovered evidence, therefore, would be unlikely to produce an acquittal in a new trial.

## CONCLUSION AND ORDER

Holt's affidavit is not of such a nature that it would probably produce an acquittal in a new trial. Accordingly, it is hereby

ORDERED that the defendant's motion [1410] for a new trial be, and hereby is, DENIED.

SIGNED this 23rd day of February, 2011.

```
                                    _____/s/_____
                                    RICHARD W. ROBERTS
                                    United States District Judge
```